673 So.2d 1088 (1996)
Leslie CORVERS, et al.
v.
ACME TRUCK LINES, et al.
No. 95-CA-925.
Court of Appeal of Louisiana, Fifth Circuit.
April 16, 1996.
*1089 Robert T. Garrity, Jr., Harahan, for Plaintiff/Appellant, Leslie L. Corvers.
Charles Hooker, Heno & Associates, Metairie, for Defendant/Appellee, Acme Truck Lines, Inc.
Before BOWES and WICKER, JJ., and CHIASSON, J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Plaintiff Leslie Corvers appeals a jury verdict finding her 40% at fault in a collision between her car and a truck owned by Acme Truck Lines, defendant. The accident occurred on Airline Highway near LaPlace, close to River Parishes Hospital. She also appeals the jury's determination of damages. We affirm.
The accident occurred on October 29, 1993, at approximately 2:30 p.m., as Corvers was driving northbound on Airline Highway. It had been lightly drizzling for several hours. At this location, Airline is four lanes wide, with two lanes in each direction (north and south) divided by a median or neutral ground. The Acme truck, a flatbed rig (18 wheeler) that was loaded with 30,000 pounds of scaffolding, was driven by Peter Danos, an Acme employee. Danos was leaving a business location with the loaded truck on his way to a delivery in Westwego. He was located in the business's driveway, and was in the process of executing a left hand turn from the driveway into the southbound lane of traffic when Corvers, who was traveling northbound in the right lane, collided with the truck's rear wheels. Danos testified that he looked both ways before executing the turn, and that he had seen the plaintiff's car before he began to turn but felt that she was far enough away. Plaintiff testified that she was going approximately 40-50[1] miles per hour (in a 55 mph zone) when she saw the truck in front of her. She testified that originally she thought that she would go under the truck and get her head chopped off. She did not have time to do anything but try to steer right and brake hard. Corvers said that her car kept going straight, which caused her to slide into the truck's rear wheels. Danos was not hurt; the impact knocked out Corvers' four front teeth, caused whiplash injuries to her neck, bruised her sternum, and seriously bruised her right ankle.[2]
After a two day jury trial, the jury returned a verdict finding Acme 60% at fault, *1090 plaintiff 40% at fault, and awarding damages of $85,000.00. Plaintiff appeals, arguing that she should be found 0% at fault, and that damages should be increased.
ANALYSISAPPORTIONMENT OF FAULT
A summary of the respective duties of each motorist in the instant situation can be found in Migues v. Hebert, 93-1509 (La.App. 3 Cir. 6/1/94) 640 So.2d 670:
A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. LRS 32:124. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. [Emphasis supplied.] (Cites omitted.) Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. (Cites omitted.) The presumption or assumption may not be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle. (Cites omitted.)
640 So.2d at 672, quoting Valin v. Barnes, 550 So.2d 352 (La.App. 3 Cir.1989), writ denied 552 So.2d 399 (La.1989).
A driver entering the highway has a primary or high duty to avoid a collision; this duty becomes more onerous as the hazards increase and requires a motorist to use every reasonable means available to ascertain that his entry onto the highway may be made in safety, and such a driver is required to keep a lookout for vehicles on the highway and desist from entering until it is apparent to a reasonably prudent person that such can be done in safety. Soileau v. LaFosse, 558 So.2d 294 (La.App. 3 Cir.1990).
The burden of proving circumstances, such as speed, which caused or contributed to the accident is on the driver intruding into a favored street in violation of LSA-R.S. 32:124. Migues v. Hebert, supra.
Danos was engaged in two high risk maneuvers: entering a favored roadway from a side street, and making a left turn[3], in rainy weather. Danos, as the driver entering the favored street, owed a higher duty to avoid an accident than did Ms. Corvers, who had the legal right-of-way. However, the favored driver can still be found contributorily negligent if their substandard conduct contributed to the cause of the accident. See Hartdegen v. Juneau, 296 So.2d 334 (La.App. 4 Cir.1974); Loveday v. Travelers Ins. Co., 585 So.2d 597 (La.App. 3 Cir.1991).
In appealing the apportionment of fault, Ms. Corvers objects to testimony that tended to suggest that she was intoxicated at the time of the accident. Ms. Corvers admitted both to the investigating officer and on the witness stand that she had drunk three-quarters of a beer at Pizza Hut with her lunch shortly before the accident. The emergency room doctor recorded that he smelled alcohol on her breath and he opined that her ability to drive was impaired; however, he did not see her drive, he did not ask her how much alcohol she had consumed or when, nor did he perform any alcohol blood level studies or a breath analyzer test. There is no record in his examination notes of incoordination or mental status changes. The investigating officer did not order any alcohol level tests done because he did not feel Corvers was at fault in the accident, nor did he feel the tests were necessary, because he did not observe anything at the scene to suggest the plaintiff was alcohol impaired. Some confusion exists in the emergency room records regarding Ms. Corvers's history of alcohol use: she testified that she admitted to a past history of moderate to heavy alcohol use following the death of her first husband fifteen *1091 years earlier, but the doctor recorded her statement as use that day. He also testified that her speech was slurred, but he did not record this in the examination notes because he said it was medically insignificant.
Defendant hired an expert in accident reconstruction to perform tests. The expert, Joseph H. Andre, reconstructed a demonstration of the accident. The test differed from the actual accident in that the test day was dry, not raining, and the test driver did not have a child passenger, as did plaintiff. Additionally, the test was conducted at 40 mph, but Corvers's testimony reflects that she may have been going as much as 10 mph faster. Danos drove the same rig in the test as he drove the day of the accident. The rig was loaded with the same amount of weight. The test determined Andre's opinion that plaintiff should have had enough time to see and avoid hitting the truck's back wheels.
Considering all of the testimony and evidence in the record, and giving deference to the jury's province as fact finder, we find there are reasonable factual bases supporting the jury's determination of fault between the parties.
Next, plaintiff appeals the amount of damages awarded by the jury, requesting that this amount be increased. The role of the appellate court in reviewing general damage awards is not to decide what it considers to be the appropriate award, but is rather to review the exercise of discretion by the trier of fact, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). The appellate court should rarely disturb an award of general damages, since the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Id. at 1261. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Id. at 1260.
The jury awarded $85,000.00 in this case, which included the $23,279.29 in past medical expenses proven by plaintiff. This leaves general damages of $61,720.71. Corvers suffered four knocked out front teeth and serious whiplash injuries to her neck. Her teeth were replaced by four implants, the process of which lasted approximately one year. The court heard testimony from two dentists and plaintiff regarding the lengthy process of installing the implanted teeth, and the pain involved in the healing. Her dentist testified that it was not unforeseeable that plaintiff would have to have several of the crowns replaced at some time in the future, as crowns are not permanent and can be damaged. However, he could not say with certainty the probable extent of any future tooth work plaintiff might need. His estimate, if several new crowns were needed, was approximately $20,000.00.
Regarding the neck injury, plaintiff began seeing one chiropractor in Metairie, but switched to another closer to her home in LaPlace shortly after beginning treatment. Both he and plaintiff testified that she had made good progress in resolving her neck injury and headaches, but that plaintiff still had some residual symptoms at trial, and would probably continue to have some intermittent pain into the future. Mrs. Corvers testified that she had seen another doctor who performed an MRI scan, which he reported to her as normal.
In light of the above testimony and evidence, we do not think that the jury was abusively low in its award of general damages. Therefore, we will not disturb this award.
AFFIRMED.
NOTES
[1] Corvers testified that she told the officer that she was going approximately 50 mph, but that he estimated it to be closer to 40 mph, which is what he recorded in his report.
[2] Corvers' youngest daughter, Lacey, was a passenger in the car but was not hurt in the collision.
[3] Drivers executing left turns have a heavy burden of care under the law. LSA-R.S. 32:104; Murphy v. Lynch, 313 So.2d 646 (La.App. 2 Cir. 1975).