707 So.2d 1026 (1998)
Judy SEVERSON
v.
ST. CATHERINE OF SIENNA CATHOLIC CHURCH, et al.
No. 97-CA-1026.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1998.
Writ Denied April 24, 1998.
*1027 Thomas L. Gaudry, John M. Crosby, Windhorst, Gaudry, Ranson, Higgins & Gremillion, L.L.C., Gretna, for Defendants/Appellants.
John D. Sileo, Allen Berger and Associates, New Orleans, for Plaintiff/Appellee.
Before GAUDIN, WICKER and GOTHARD, JJ.
WICKER, Judge.
This is an appeal from a partial summary judgment on liability. The case arises from a 1992 intersectional collision between a car driven by plaintiff, Judy Severson, and a car operated by defendant Joseph Tramuta and owned by his employer, St. Catherine of Siena Catholic Church. On plaintiff's motion for partial summary judgment, the trial court rendered summary judgment finding that Tramuta was one hundred percent at fault in the accident and that his employer, St. Catherine, is vicariously liable for his actions. Summary judgment was denied as to a third defendant, the Archdiocese of New Orleans. Defendants have appealed. We affirm.
The petition alleges that on September 15, 1992 at approximately 3:45 p.m., Judy Severson was heading south in her car on Orion Avenue in Metairie. At the intersection of Orion with Brockenbraugh Court, a car traveling in the opposite direction, driven by Tramuta and owned by St. Catherine, made a left turn onto Brockenbraugh in front of her *1028 car, causing the collision and resulting in injury and damages. Made defendants were Tramuta, St. Catherine, and the Archdiocese of New Orleans.[1]
After the defendants answered the petition, plaintiff filed a motion for summary judgment on the issue of liability. The gist of plaintiff's argument is that Tramuta, as the left-turning motorist, is presumed to be at fault in the collision and that defendants failed to rebut the presumption by showing that Tramuta was free from fault. In support of the motion plaintiff submitted depositions by Tramuta and Severson, the police report on the accident, and plaintiff's requests for admissions.
In opposition defendants submitted the affidavit of Tramuta and photographs showing the damage to both vehicles from the accident. Defendants contend the photographs show greater damage than would have occurred had plaintiff been driving within the speed limit as she claimed.
In her deposition Severson testified as follows: She had made a left turn from Homer Street onto Orion, heading towards Brockenbraugh one block away. She was going 20 miles an hour or less, which is the speed limit on Orion. She saw the other car when she was half a block away from it. She did not remember seeing a turn signal. Then the other car just turned right into her car. It did not slow up before it turned. She was wearing a seat belt.
Tramuta gave the following testimony in his deposition: The accident took place around 3:00 p.m. on a clear, dry day. He was running an errand in his capacity as maintenance supervisor for St. Catherine and was heading down Orion. At the intersection of Orion and Brockenbraugh he paused or stopped, planning to make a left turn onto Brockenbraugh. He looked, but saw no oncoming traffic on Orion, although he noticed another car waiting at the stop sign on Brockenbraugh to turn onto Orion. He had his turn signal on. As he made his turn, suddenly his car collided with Severson's car coming at him on Orion. He never saw her car prior to the collision. The other driver told him she was not wearing her seat belt and he saw for himself that she was not wearing her seat belt.
In the affidavit filed in opposition to the motion for summary judgment Tramuta made the following assertions: He maintained a lookout ahead for vehicles approaching from the opposite direction on Orion until he looked to his left to being his left turn. No cars were coming toward him on Orion as he began his turn onto Brockenbraugh. At the time of the accident it was "school zone" time. He was driving a couple of miles an hour or less, because he had slowed and come to a stop or almost to a stop to make the left turn. As he approached the intersection his turn signal was on.
In the affidavit Tramuta also makes other statements which are opinion rather than fact (e.g., that Severson must have been speeding or come from behind a parked car after he began making his left turn, because otherwise he would have seen her car before he began his turn; that Severson should have seen his turn signal and his slow turning maneuver and slowed or taken evasive action). Those statements are conclusionary and may not be considered as factual support of the defense. Rather, they set forth defendants' theories regarding the cause of the collision.
The police report on the accident indicates that both drivers told the police officer they were wearing their seat belts. The diagram sketched by the police officer shows the collision as taking place in the middle of the intersection of Orion and Brockenbraugh, both of which are two-way undivided residential streets with 20 mile-per-hour speed limits. The police officer issued a citation to Tramuta for failure to yield and a citation to Severson for failure to have proof of insurance.
On appeal defendants contend the court erred in granting summary judgment because there are genuine issues of material fact relative to the speed of plaintiff's vehicle, as to whether Severson should have seen that Tramuta was preparing to turn and *1029 taken evasive action, and whether Tramuta preempted the intersection prior to the accident.

MOTION TO DISMISS
Appellee has urged us to dismiss this appeal for lack of jurisdiction, contending that under the 1997 amendment of La.Code Civ. P. Art. 1915, a summary judgment on liability only is not appealable without specific agreement of the parties or specific designation as a final judgment by the trial court. We find no merit to that argument, however, because at the time the judgment herein was rendered and appealed (June 24, 1997), a final judgment could be rendered as to liability alone on summary judgment. La.Code Civ. P. Art. 966(E); La.Code Civ. P. Art. 1915(A)(3). Act 483 of 1997, which amended Art. 1915 as noted above, was not effective until July 1, 1997. Defendants' right to appeal attached on the signing of the order of appeal, prior to the effective date of Act 483, and is a substantive right. Therefore the amendment cannot be applied to remove the right of appeal and this court has jurisdiction of the appeal.

MERITS OF SUMMARY JUDGMENT
"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. Art. 966(A)(2).
Art. 966(C) sets out the burden of proof on a motion for summary judgment. A motion which shows there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial. La. Code Civ. P. Art. 966(C)(1).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La.Code Civ. P. Art. 966(C)(2).[2]
"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard." La. R.S. 32:122. A driver may not turn at an intersection unless and until such movement can be made with reasonable safety. La. R.S. 32:104(A). Further, a driver intending to make a turn must "give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." La. R.S. 32:104(B).
Drivers executing left turns have a heavy burden of care under law. Corvers v. Acme Truck Lines, 95-925 (La.App. 5 Cir. 4/16/96), 673 So.2d 1088, 1090 n. 3.
Under our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence.
Plaisance v. Epherson, 466 So.2d 485, 487 (La.App. 5 Cir.1985). "The burden of proving *1030 freedom from negligence in executing the turn rests upon the person making the turn." Id.
If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. Sanchez Fernandez v. General Motors Corporation, 491 So.2d 633, 636 (La.1986). In addition, an on-coming motorist has a right to assume that a left-turning motorist will yield the right-of-way. Walker v. McCartney, 96-706 (La.App. 5 Cir. 9/17/97), 700 So.2d 898, 902-03.
However, the favored driver can still be found contributorily negligent if his or her substandard conduct contributed to the cause of the accident. Corvers v. Acme Truck Lines, supra, at 1090. A motorist making a left turn at an intersection will be held free of negligence when the collision results because of the oncoming vehicle's excessive speed which he could not reasonably anticipate. Burton v. Allstate Insurance Company, 139 So.2d 817 (La.App. 3 Cir. 1962).
Left-turning drivers will be held free of negligence if they have made the proper signal and commenced the turn upon a reasonable belief, after observing approaching traffic, that the turn would not unduly interfere with the progress of approaching traffic, or where the sole proximate cause of the accident was excessive speed, lack of lookout, and/or lack of control on the part of the approaching vehicle in failing to observe a seasonably-signaled left turn intent and continuing to approach without attempting to bring the vehicle under control. Stafford v. Insurance Co. of State of Pa., 170 So.2d 702 (La.App. 1 Cir.1964).
Thus, Severson's initial burden was simply to establish that she had the right of way and that Tramuta turned left into her path when she was so close to the intersection as to constitute an immediate hazard. There is no dispute that she was the favored motorist or that Tramuta turned left. The fact that their vehicles collided shows plaintiff was close enough to the intersection to constitute an immediate hazard at the time he turned.
Defendants' burden, therefore, was to show that Tramuta signaled properly prior to making the turn and that he free from negligence in failing to see Severson (e.g., either because she was going too fast or because she came from an obscured position).
The parties' versions of the accident are conflicting: Severson said she saw Tramuta's vehicle when she was turning from Homer onto Orion. Tramuta said he saw no car coming toward him when he reached the intersection of Orion and Brockenbraugh. Severson said she noticed no turn signal on Tramuta's car. Tramuta said he put on his turn signal. Severson said she was traveling at 20 m.p.h. or less; Tramuta said she must have been going fast or come from being a parked car or he would have seen her. Severson said she was wearing the seatbelt; Tramuta said she was not wearing the seatbelt.
Issues of credibility have no place in summary judgment procedure. Gassen v. East Jefferson Gen. Hosp., 628 So.2d 256 (La.App. 5 Cir.1993). This principle is generally applied where the evidence before the trial court is conflicting, forcing the trial court to accept one version of the facts over another. Hinds v. Clean Land Air Water Corp., 96-1058 (La.App. 3 Cir. 4/30/97), 693 So.2d 321, 324.
Although these conflicting statements may appear to establish credibility issues which could not be decided on a motion for summary judgment, in fact they do not. It is undisputed that Severson was traveling in the favored direction and that Tramuta did not see her. Tramuta alleges Severson was speeding, but has produced no evidence to support the claim. The photographs of the damage to the vehicles, on which Tramuta relies to support his claim the plaintiff was speeding, offer no assistance to us. The copies in the record are photocopies with poor resolution, in which it is nearly impossible to decipher the damage to the vehicles. Further, defendants provided no expert testimony analyzing the damage shown by the photographs. Such a finding is *1031 not within the parameters of our authority to take judicial notice.
Without factual support for Tramuta's claim that the extent of the damage could have been caused only by excessive speed, defendants have failed to establish the required basis to rebut the presumption in favor of Severson as the oncoming motorist and, thus, to provide a basis to deny the motion for summary judgment.
Considering the above, we conclude that the trial court did not err in granting summary judgment. Because this was a partial judgment on liability only, there are still issues to be resolved and the matter will be remanded.
For the foregoing reasons, the summary judgment is affirmed and the matter is remanded to the district court for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] The correct legal names of the church entities are Congregation of St. Catherine of Siena Roman Catholic Church and Roman Catholic Church of the Archdiocese of New Orleans.
[2] Article 966(C) was amended by Acts 1997, No. 483 (eff. July 1, 1997), to include the language in Paragraph (C)(2). The language in (C)(2) is considered interpretive, however, and therefore applies retroactively.