JONEKA D. HENRY

VERSUS

JON M. REEVES AND THE STATE OF
LOUISIANA THROUGH ITS DEPARTMENT
OF PUBLIC SAFETY AND CORRECTIONS

NO. 19-CA-550
 C/W
19-C-456

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 781-258, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING


April 28, 2020


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson


<u>**WRIT DENIED; APPEAL DISMISSED**</u>
  **SMC**
  **FHW**
  **MEJ**

COUNSEL FOR PLAINTIFF/APPELLEE,
JONEKA D. HENRY
    Suzette P. Bagneris
    Emile A. Bagneris, III

COUNSEL FOR DEFENDANT/APPELLANT,
STATE OF LOUISIANA THROUGH ITS DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS AND JON M. REEVES
    Honorable Jeffrey M. Landry
    Lance S. Guest

**CHEHARDY, C.J.**

Defendants, Louisiana Department of Public Safety and Corrections ("DPSC") and Jon Reeves, seek review of the trial court's grant of partial summary judgment in favor of respondent/plaintiff, Joneka Henry, on the issue of liability. For the following reasons, after a *de novo* review, we deny defendants' writ application and dismiss defendant's appeal for lack of jurisdiction.

**Factual Background and Procedural History**

This suit arises out of a motor vehicle accident that occurred at approximately noon on March 16, 2017, in Harvey, Louisiana. Plaintiff, Joneka Henry, was proceeding northbound on Maplewood Drive, when defendant, Jon Reeves, who was proceeding in the opposite direction, executed a left-hand turn into Ms. Henry's lane of travel. As a result, Ms. Henry's vehicle struck the rear, passenger side of Mr. Reeve's vehicle. At the time of the accident, Mr. Reeves was employed by DPSC and was driving his vehicle in the course and scope of his employment.

On March 5, 2018, Ms. Henry filed suit against Jon Reeves and his employer, DPSC, seeking damages for the injuries she sustained in the accident. After defendants answered the petition and discovery was conducted, Ms. Henry filed a motion for partial summary judgment on the issue of liability. Ms. Henry argued that Mr. Reeves, as the left-turning motorist, is presumed to be at fault and that defendants failed to rebut the presumption by showing that Mr. Reeves was free from fault. In support of the motion, Ms. Henry submitted her own deposition testimony, the deposition testimony of Mr. Reeves and his two guest passengers, Gary Westcott, and Steven LaSalle, and the deposition testimony of the investigating officer, Deputy Carl Quijano.

In opposition, relying on the same deposition testimony, defendants argued that a genuine issue of material fact remained regarding whether Ms. Henry was comparatively at fault for the accident. Specifically, based on the testimony of Mr. Reeves and his guest passengers surmising that Ms. Henry may have been exceeding the speed limit at the time of the accident, defendants contend there is an issue of fact regarding whether, but for her speeding, Ms. Henry could have avoided the accident.

In her deposition, Ms. Henry testified that she was driving northbound on Maplewood Drive towards the Westbank Expressway. She was traveling 25 miles-an-hour, which is the speed limit on Maplewood Drive, and was wearing a seatbelt. Ms. Henry first noticed a vehicle traveling in the opposite direction when the vehicle was "about maybe one or two blocks" away from her. When she got close to the intersection at Hugh Drive, the opposing vehicle "quickly turned [left] in front of [her]." She did not leave her lane of travel. When asked what she did to avoid the accident, Ms. Henry stated that she tried to brace herself and to apply the brakes.

Mr. Reeves testified in his deposition that he and two guest passengers were traveling southbound on Maplewood Drive with the intention of making a left-hand turn onto Hugh Drive. As he looked forward, traffic from the opposite direction appeared to be a block away and felt he "had plenty of time to make the turn." As he started to make the left turn, Mr. Reeves noticed that a vehicle on Hugh Drive was stopped at the stop sign and protruding into the lane in which he was turning. This caused Mr. Reeves to have "to adjust [his] path into that street [to the right] a little bit [and] slow down a little bit … to avoid that vehicle." As he was executing a wider left turn than he first planned, Mr. Reeves heard one of his passengers tell him he needed to "hurry up" because a vehicle was approaching. Mr. Reeves then "pressed the gas … to get clear of the intersection, and as [he]

was clearing the intersection" the rear passenger side tail-light of his vehicle was struck. When asked about Ms. Henry's speed, Mr. Reeves testified:

> I could venture a guess that, based on the distance I first observed her and the distance I had to travel versus the distance she traveled, that it would probably have exceeded the 25-mile-an-hour posted speed limit, but I couldn't give an accurate guesstimate.

Mr. Westcott testified that he was sitting in the front seat passenger side of Mr. Reeve's vehicle and was looking in the backseat talking to Steve LaSalle. He could tell their vehicle was slowing down so he assumed they were approaching a stop sign. He heard Mr. LaSalle yell "watch it," and when he turned and looked, he saw a white Durango headed straight for him. While Mr. Reeves was still in Ms. Henry's lane of travel, Mr. Westcott yelled something to the effect of "go," fearing the Durango would strike their vehicle and directly impact him. Mr. Reeves immediately pressed the gas, but their vehicle was still struck by the Durango. Mr. Westcott further stated that "with [Mr. Reeves] punching it," it was his opinion that Ms. Henry had enough time to swerve in order to avoid the accident, but it looked to him as if she did not apply her brakes or did anything so slow down as there were no skid marks.

Mr. LaSalle, who was sitting in the rear passenger seat of Mr. Reeves' vehicle, testified that as Mr. Reeves began to execute the left turn, he could see the Durango approaching in the distance, "a couple hundred feet in front of them." He noted that the Durango was getting closer and that Mr. Reeves was "slowing down or pretty much almost came to a stop while making the turn." He could not see why Mr. Reeves was slowing down because he was focused on the approaching Durango. Before he could say anything, he heard Mr. Westcott yell "watch out." Mr. Reeves then drove his vehicle forward but Mr. Henry's vehicle still struck the rear of Mr. Reeves' vehicle. Mr. LaSalle further testified that he "believed [Ms.

Henry] was speeding" and that "she was distracted by something;" otherwise, "had [she] seen, a very slight correction could have avoided striking us."

The investigating officer, Deputy Carl Quijano, testified that though he did not issue a citation to Mr. Reeves, he found Mr. Reeves "in violation for failure to yield while turning left" at the intersection, and found no violations on the part of Ms. Henry. His report indicates that Ms. Henry advised him at the scene that she was driving the speed limit and that she had applied her brakes attempting to avoid the accident. Deputy Quijano further testified that, based on his investigation of the accident, the drivers' statements, and visual viewing of the accident scene, he found no evidence to indicate that speed was a factor in the accident or that Ms. Henry violated any traffic regulation.

Ms. Henry's motion for partial summary judgment came for hearing on August 15, 2019, after which the trial court took the matter under advisement. The trial court issued judgment on August 23, 2019, with written reasons, granting Ms. Henry's partial motion for summary judgment on the issue of liability. The trial court did not designate the judgment "as a final judgment … after an express determination that there is no just reason for delay." La. C.C.P. art. 1915(B)(1).

On September 5, 2019, defendants filed a notice of intent to apply for supervisory writs seeking review of the August 23, 2019 judgment. A return date was set for September 23, 2019. Defendants timely filed their writ application wherein they argued that the trial court erred in granting plaintiff's motion for partial summary judgment on liability as questions of fact remained regarding whether Ms. Henry was speeding and could have taken corrective action to avoid the accident. In addition to the writ application, on September 19, 2019, defendants filed a motion for devolutive appeal from the August 23, 2019 judgment, seeking review of the granting of plaintiff's motion for partial summary judgment on liability. An order of appeal was signed by the trial court on

September 19, 2019. Prior to rendition of a decision on the writ application, the record in the appeal was lodged. Thereafter, on the motion of defendants, this Court consolidated defendants' writ application with its appeal.

**Appellate Review of the August 23, 2019 Judgment**

In this instance, the granting of Ms. Henry's motion for partial summary judgment resolves the issue of liability of the parties but does not dispose of the entire case as to any party because the amount of damages is still at issue. Moreover, there is no dispute that the judgment in question lacks the necessary designation as a "final judgment by the court after an express determination that there is no just reason for delay." Nonetheless, defendants argue the judgment is a final judgment pursuant to La. C.C.P. art. 1915(A)(5), as the issue of liability has been decided and only questions regarding damages remain.

The relevant provision of La. C.C.P. art. 1915 provides, in pertinent part:

A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
***
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).
***
(5)     Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
***
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in the original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2)  In the absence of such a determination and designation, any such order or decision shall not

constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all of the claims and the rights and liabilities of all the parties.

The issue of whether a judgment granting a motion for partial summary judgment on liability is a final, appealable judgment was addressed in *Diecidue v. Tittle*, 12-0903 (La. App. 4 Cir. 8/14/13), 122 So.3d 1143, 1145-46, which reasoned and held as follows:

> Here, the motion for partial summary judgment was granted as to the liability of [defendant] for legal malpractice pursuant to Louisiana Code of Civil Procedure article 966(E), leaving only the issue of damages to be tried. Therefore, by virtue of the literal language of Louisiana Code of Civil Procedure article 1915(A)(3), the judgment is not immediately appealable in the absence of a designation of finality pursuant to art. 1915(B). In *Crescent City Physicians, Inc. v. Desse*, 2004-1280 (La. 10/1/04), 883 So.2d 963, the Louisiana Supreme Court reversed and dismissed the appeal of a partial summary judgment on the issue of liability. In his concurrence, Chief Justice Calogero noted that La. C.C.P. art. 1915(A)(5) "is not applicable in this case because the issue of liability was not tried separately by the court … . Instead, the trial court granted a partial summary judgment on the liability issue pursuant to … art. 966(E)." *Id.* (Calogero, C.J., concurring).

> Accordingly, we find that absent a designation of finality pursuant to Louisiana Code of Civil Procedure 1915(B), the partial summary judgment rendered by the trial court on the issue of liability is not appealable. Because we lack jurisdiction, we dismiss the instant appeal.

Based on the foregoing, we likewise find that the trial court's August 23, 2019 judgment granting Ms. Henry's motion for partial summary judgment on the issue of liability was issued pursuant to La. C.C.P. art. 966(E), and because there is no express designation of finality pursuant to La. C.C.P. art. 1915(B), the judgment is not appealable and this Court lacks jurisdiction as to defendants' appeal. Consequently, our review of the trial court's August 23, 2019 judgment is pursuant to an exercise of our supervisory jurisdiction.

**Merits of the Summary Judgment**

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art 966(A)(2). "A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art 966(A)(3). "The burden of proof rests with the mover. Nevertheless, if the mover will not be able to bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

A fact is "material" for purposes of summary judgment if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute. *Boutin v. Roman Catholic Church of the Diocese of Baton Rouge*, 14-313 (La. App. 5 Cir. 10/29/14), 164 So.3d 243, 245, *writ denied*, 14-2495 (La. 2/13/15), 159 So.3d 469.

Appellate courts review summary judgments *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. The decision as to the propriety of a grant of a motion for summary

judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

The duty of a left-turning motorist is set forth in La. R.S. 32:122, which provides, in pertinent part, that "[t]he driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard." Additionally, La. R.S. 32:104(A) states that "[n]o person shall … turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

Drivers executing left turns have a heavy burden of care under the law. *Severson v. St. Catherine of Sienna Catholic Church*, 97-1026 (La. App. 5 Cir. 2/11/98), 707 So.2d 1026, 1029, *writ denied*, 98-653 (La. 4/24/98), 717 So.2d 1178; *Corvers v. Acme Truck Lines*, 95-925 (La. App. 5 Cir. 4/16/96), 673 So.2d 1088, 1090 n. 3. Before attempting a left turn, a motorist should ascertain whether it can be completed safely. *Theriot v. Lasseigne*, 93-2661 (La. 7/5/94), 640 So.2d 1305, 1312. Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. *Allstate Ins. Co. v. Reynolds*, 97-1178 (La. App. 5 Cir. 5/13/98), 712 So.2d 981, 984, *writ denied*, 98-1583 (La. 6/24/98), 719 So.2d 981. Additionally, the oncoming driver may take advantage of a presumption of the left-turning motorist's negligence when the oncoming driver proves that the left-turning motorist executed a left-hand turn and crossed the center line at the time of impact. *Miller v. Leonard*, 588 So.2d 79, 81 (La. 1991); *Baker v. State Farm Mut. Auto. Ins. Co.*, 49,468 (La. App. 2 Cir. 1/21/15), 162 So.3d 405, 409. In *Plaisance v. Epherson*, 466 So.2d 485, 487 (La. App. 5th Cir. 1985), we stated:

> Under our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence.

"The burden of proving freedom from negligence in executing the turn rests upon the person making the turn." *Id.* If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. *Severson*, 707 So.2d at 1030. In addition, an on-coming motorist has a right to assume that a left-turning motorist will yield the right-of-way. *Walker v. McCartney*, 96-706 (La. App. 5 Cir. 9/17/97), 700 So.2d 898, 902-03.

All motorists on Louisiana highways must drive with due regard for the traffic on the highway and have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. La. R.S. 32:64(A). Thus, notwithstanding the presumption of negligence attributed to a left-turning driver, the favored motorist can still be assessed with comparative fault if her substandard conduct contributed to the cause of the accident. *Anderson v. May*, 01-1031 (La. App. 5 Cir. 2/13/12), 812 So.2d 81, 85. A motorist making a left turn at an intersection will be held free of negligence when the collision results because of the oncoming vehicle's excessive speed which he could not have reasonably anticipated or an oncoming driver's lack of lookout. *Id.*

In the instant case, Ms. Henry's initial burden was simply to establish that she had the right of way and that Mr. Reeves turned left into her path when she

was so close to the intersection as to constitute an immediate hazard. There is no dispute that Ms. Henry was the favored motorist or that Mr. Reeves turned left. The fact that their vehicles collided shows Ms. Henry was close enough to the intersection to constitute an immediate hazard at the time Mr. Reeves turned. *See Severson*, 707 So.2d at 1030. The burden then shifted to Mr. Reeves to show that he was free from negligence in failing to see Ms. Henry (*e.g.*, either because she was speeding or because of a lack of lookout).

While the facts of the accident are largely undisputed, the parties' versions conflict in some regard. Mr. Reeves contends that he began to execute the left turn when Ms. Henry's vehicle was about a block and a half away. Ms. Henry says that though she first observed Mr. Reeves' vehicle from a block or so away, as she proceeded north on Maplewood Drive, he turned "quickly" in front of her. Ms. Henry said she was traveling at 25 miles per hour, the posted speed limit. Mr. Reeves "guesttimates" that she was speeding and Mr. LaSalle "believes" she was speeding. Ms. Henry stated that she braced herself and tried to apply her brakes prior to impact, and Deputy Quijano recorded that she had applied her brakes. Mr. Reeves and his guest passengers were of the opinion that Ms. Henry did not apply her brakes or take any evasive action in order to avoid the collision because she remained in her lane the entire time and there were no skid marks found at the scene.

Issues of credibility have no place in summary judgment procedure. *Hutchison v. Knights of Columbus*, 03-1533 (La. 2/20/04), 866 So.2d 228, 234. This principle is generally applied where the evidence before the trial court is conflicting, forcing the trial court to accept one version of the facts over another. *Severson*, 707 So.2d at 1030. Although the conflicting testimonies herein may appear to establish credibility issues, which could not be decided on a motion for summary judgment, in fact they do not. It is undisputed that Ms. Henry had the

right of way. According to Mr. Reeves' own testimony, while he saw Ms. Henry's vehicle from about a block and a half away, and believed he had sufficient time to successfully make the turn, he encountered a situation on the inferior street that required him to actually slow down during the turn—almost to a stop—and make a wider left turn than originally planned. Also, as to Mr. LaSalle's assumption that Ms. Henry was "distracted by something," because otherwise she would have taken action to avoid the accident, it is merely an assumption not supported by any factual evidence. Further, though Mr. Reeves and Mr. LaSalle "believe" Ms. Henry was speeding, defendants have produced no evidence to support this belief. Moreover, Deputy Quijano found no evidence at the scene to suggest that Ms. Henry was speeding.

Ultimate or conclusory facts or conclusions of law are not to be utilized on a summary judgment motion. *Thompson v. South Central Bell Tel. Co.*, 411 So.2d 26, 28 (La. 1982). We find that the "guesttimate" of Mr. Reeves, the "belief" of Mr. LaSalle that Ms. Henry was speeding, and the assumption of Mr. Westcott that Ms. Henry must have been "distracted" are statements as to ultimate or conclusory facts or conclusions of law with regard to Ms. Henry's fault in causing the accident. These statements cannot be used to defeat summary judgment. Thus, other than pure speculation and conjecture, defendants have provided no expert testimony that could potentially support their unsubstantiated contentions. As we stated in *Severson*, "[s]uch a finding is not within the parameters of our authority to take judicial notice." *Severson*, 707 So.2d at 1031.

Without factual support for defendants' contention that the accident could have been caused by Ms. Henry's excessive speed or lack of lookout, we find defendants have failed to establish the required basis to rebut the presumption in favor of Ms. Henry as the oncoming motorist and, thus, have failed to provide a basis upon which to deny the motion for summary judgment.

Considering the foregoing, we conclude the trial court did not err in granting partial summary judgment on liability in favor of Ms. Henry. Accordingly, we deny defendants' writ application. We also dismiss defendants' appeal for lack of jurisdiction.

**WRIT DENIED; APPEAL DISMISSED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 28, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

# 19-CA-550
### C/W 19-C-456

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
SUZETTE P. BAGNERIS (APPELLEE)          LANCE S. GUEST (APPELLANT)

## MAILED

EMILE A. BAGNERIS, III (ATTORNEY)          HONORABLE JEFFREY M. LANDRY
2714 CANAL STREET                          (ATTORNEY)
SUITE 403                                  LOUISIANA DEPARTMENT OF JUSTICE
NEW ORLEANS, LA 70119                      1885 NORTH 3RD STREET
                                           6TH FLOOR, LIVINGSTON BUILDING
                                           BATON ROUGE, LA 70802